970 So.2d 1022 (2007)
S.J.G.
v.
A.A.G.
No. 2007 CJ 0625.
Court of Appeal of Louisiana, First Circuit.
September 19, 2007.
*1023 Melanie Newkome Jones, Baton Rouge, for Plaintiff/Appellant S.J.G. (Mother).
D. Blayne Honeycutt, Denham Springs, for Defendant/Appellee A.A.G. (Father).
Before: GAIDRY, MCDONALD and MCCLENDON, JJ.
MCDONALD, J.
This is a child custody case wherein one parent sought to terminate the parental rights of the other parent after lengthy litigation between them. The trial court granted the termination. We vacate the judgment in part, affirm the judgment in part, and remand, finding that there are no circumstances under which one parent can institute a proceeding to terminate the parental rights of the other parent.
A.A.G., (the father herein) and S.J.G. (the mother herein) were married on May 23, 1992.[1] Their daughter, K.M.G., was born on September 12, 1991, and their son, N.A.G., was born on January 31, 1994.
Some time thereafter, the parties separated and on June 14, 1999, A.A.G. and S.J.G. entered into a stipulated interim judgment that gave them joint custody of the children as co-domiciliary parents and provided that A.A.G. pay S.J.G. $100.00 monthly child support. Injunctions were issued prohibiting each party from harassing the other or going to the other's home or workplace. Further, the judgment appointed psychologist Dr. J. Steven Welsh to perform an evaluation of the parents and the children.
On July 28, 2000, S.J.G. filed a petition for divorce, asking for sole custody with reasonable visitation to A.A.G. Dr. Welsh's 1999 evaluation was attached to the petition. In a report dated October 20, 1999, he recommended: joint custody, with domiciliary custody to A.A.G. and frequent, liberal non-supervised visitation to S.J.G.; that the parties attend counseling; that S.J.G. consider therapy for possible substance abuse; and that A.A.G. consider intervention for probable alcohol abuse.
On October 30, 2000, the parties entered into a consent judgment giving temporary custody to S.J.G.; giving alternate weekend visitation to A.A.G.; and assessing A.A.G. $500.00 monthly temporary child support payments to S.J.G. A judgment dated March 27, 2001 granted a divorce and reduced the monthly child support payment to $480.00.
A.A.G. filed a rule to change custody on November 19, 2001, asserting that the children were tardy or missed school on numerous occasions because S.J.G. did not wake them and that both children were in danger of failing in school, that S.J.G. left the children alone with her new husband while she traveled, and that S.J.G. had left the children to go out drinking. A.A.G. asserted that he had re-enrolled the children in school, he had stable employment and was able to provide for the children; but that S.J.G. had no place to live and had a history of depression and prescription drug abuse. He further asserted that S.J.G. was arrested for DWI while the children were living with her and that she had failed to show up for her court date. A.A.G. asked for sole custody of the children, with reasonable supervised visitation *1024 to S.J.G., and asked for a reduction or termination of child support.
A.A.G. was awarded temporary sole custody of the children on November 19, 2001, and a hearing was set. On December 21, 2001, a stipulated judgment gave the parties joint custody, named A.A.G. as the primary custodial parent with physical custody of the children during the school year, and granted S.J.G. physical custody on alternate weekends during the school year. Child support payments to S.J.G. by A.A.G. were terminated, retroactive to November 1, 2001 (the date the children became domiciled with A.A.G.), and the parties reserved the right to litigate child support.
A.A.G. filed a rule to establish child support on October 7, 2002, and the parties thereafter entered into a consent judgment providing that S.J.G. pay A.A.G. $498.00 per month child support. Then, on February 21, 2003, A.A.G. filed a rule to accumulate arrears and make arrears executory, asserting that S.J.G. owed past due child support payments of $2,226.06. A.A.G. asked that S.J.G. be found in contempt of court and sentenced to jail time. On April 4, 2003, A.A.G. filed a rule to suspend S.J.G.'s overnight visitations, asserting that the children had sustained emotional problems as a result of S.J.G.'s conduct, that S.J.G. had a drug abuse problem and had been arrested again, and S.J.G. was attempting to have male guests overnight with the children present.
On April 24, 2003, after a hearing, the parties entered into a consent judgment providing that S.J.G. was past due on child support to A.A.G. in the amount of $1,800.00 through April 15, 2003, that she was in contempt of court, and that if the child support payments were made current by June 30, 2003, she would be purged of the contempt of court. The judgment also ordered the parties not to have overnight guests when the minor children were with them.
A.A.G. filed another rule to accumulate arrears for past due child support and for contempt of court on May 11, 2004. He asserted that S.J.G. was in arrears for $6,474.00, that she should be jailed for contempt of court, and that she was in contempt of court for having male guests overnight with the children present.
S.J.G. filed a motion for continuance on August 5, 2004, asserting that she had to prepare for a criminal proceeding and could not properly prepare for the child support hearing. The trial court granted a two-month continuance.
After a hearing, the trial court rendered judgment on October 8, 2004, finding S.J.G. in contempt and sentencing her to 90 days in jail for failure to pay child support; ordering her to pay child support in the amount of $498.00 monthly and an additional $200.00 per month until her arrearages were paid; ordering that S.J.G. pay A.A.G. $750.00 in attorney's fees plus court costs; ordering that A.A.G. produce the children before the court on November 15, 2004; and finding that S.J.G. was in arrearages for $6,474.00 for child support and that the amount was executory.
Thereafter, on October 20, 2004, S.J.G. filed a rule to show cause why child support should not be decreased and for contempt of court, asserting there had been a change in circumstances and her income had decreased substantially, and that further, A.A.G. had failed to provide the children to her on numerous occasions for visitation. S.J.G. asked that A.A.G. be punished for contempt and that she be given additional visitation with the children. Further, she asserted that A.A.G. had failed to provide her with information regarding the children's health and school, *1025 and that he interfered with her telephone contact with the children.
By stipulated judgment dated February 14, 2005, the court ruled that custody of the children remained with A.A.G. and that for the next six months S.J.G. would have only alternate weekend visitation, ordered that S.J.G. immediately return the children to A.A.G., and ordered that S.J.G.'s child support payments be reduced to $275.00 per month.
On July 5, 2006, A.A.G. filed another rule to accumulate arrearages for past due child support, and for contempt of court, as well as a petition for sole custody and/or termination of parental rights. A.A.G. asserted that S.J.G. failed to make numerous child support payments, that she was in arrears in the amount of $12,991.00, and that she had violated an order not to have male guests overnight when the children were present. A.A.G. asked that S.J.G. be held in contempt and sentenced to jail; that child support payments of $12,991.00 be made executory; and further, asserted that S.J.G. had failed to pay child support in excess of 12 months, had failed to exercise visitation since the rendition of the stipulated judgment, had male and female overnight guests, and had been arrested for DWI numerous times. He asked that he be awarded sole custody, or alternatively, that S.J.G.'s parental rights be terminated.
Thereafter, A.A.G. filed a motion and order for civil warrant asserting that pursuant to judgment the parties were to divide the summer vacation and A.A.G. was to have physical custody of the children during the school year, but that nonetheless S.J.G. kept K.M.G. the entire summer and refused to return her, and he asked that a civil warrant be issued to law enforcement personnel to accompany him to retrieve K.M.G. The civil warrant was granted on August 18, 2006.
After a hearing, the trial court ruled on September 5, 2006, finding S.J.G. in contempt of court for failure to pay child support and sentencing her to 90 days in jail, finding her in arrears in the amount of $13,816.00 plus interest and making that amount executory, finding S.J.G. in contempt for her actions during trial and sentencing S.J.G. to an additional 90 days in jail, and ruling that S.J.G.'s parental rights were terminated for failure to pay child support. S.J.G. filed a motion for new trial, which was denied.
On September 19, 2006, the trial court signed an order commuting S.J.G.'s misdemeanor sentence to probation, ruling that she had partially purged herself of the contempt by paying all financial obligations to A.A.G., and, with consent of counsel, the trial court ordered that S.J.G. be released from jail and placed on two-years unsupervised bench probation.
S.J.G. is appealing the September 5, 2006 judgment that terminated her parental rights and found her in contempt of court. She makes the following assignments of error:
1. The Trial Court erred in terminating Appellant's parental rights as there is no basis in the law for such a penalty and no evidence was presented that justified this punishment.
2. The Trial Court erred in failing to grant the Appellant's request for continuance, particularly [because] the hearing involved one of the most drastic consequences: termination of appellant's parental rights and incarceration.
3. The Trial Court erred in imposing jail time to appellant for non-payment of child support without allowing for any ability for appellant to purge herself by payment of said sums.
4. The Trial Court erred in imposing jail time to appellant for contempt of *1026 court as appellant's actions, while frustrating to the court, did not arise to the level [of] contemptuousness and complete disruption of the court proceeding to justify such a drastic punishment.

ASSIGNMENT OF ERROR NO. 1
S.J.G. asserts that the trial court erred in terminating her parental rights. She is correct. Children's Code article 1004 provides for the termination of parental rights:
A. At any time, including in any hearing in a child in need of care proceeding, the court on its own motion may order the filing of a petition on any ground authorized by Article 1015.
B. Counsel appointed for the child pursuant to Article 607 may petition for the termination of parental rights of the parent of the child if the petition alleges a ground authorized by Article 1015(4), (5), or (6) and, although eighteen months have elapsed since the date of the child's adjudication as a child in need of care, no petition has been filed by the district attorney or the department.
C. The district attorney may petition for the termination of parental rights of the parent of the child on any ground authorized by Article 1015.
D. The department may petition for the termination of parental rights of the parent of the child when any of the following apply:
(1) The child has been subjected to abuse or neglect after the child is returned to the parent's care and custody while under department supervision, and termination is authorized by Article 1015(3)(j).
(2) The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful, and termination is authorized by Article 1015(3)(k).
(3) The child has been abandoned and termination is authorized by Article 1015(4).
(4) The child has been placed in the custody of the state and the termination is authorized by Article 1015(5).
(5) The child is in foster care because the parent is incarcerated the termination is authorized by Article 1015(6).
E. When termination is authorized by Article 1015, other than on the grounds specified by Paragraph D of this Article, by special appointment, the district attorney may designate counsel for the department as a special assistant authorized to act in his stead in all such termination actions or in a particular case.
F. By special appointment for a particular case, the court or the district attorney may designate private counsel authorized to petition for the termination of parental rights of the parent of the child on the ground of abandonment authorized by Article 1015(4).
G. Foster parents who intend to adopt the child may petition for the termination of parental rights of the foster child's parents when, in accordance with Article 702(D), adoption is the permanent plan for the child, the child has been in state custody under the foster parent's care for seventeen of the last twenty-two months, and the department has failed to petition for such termination.
H. When termination is authorized by Article 1015(1) or (2) and no petition is filed to terminate the parental rights of the surviving parent pursuant to Paragraph A, C, or E of this Article after a written request to file such action is made to the district attorney by any interested person and no petition is filed *1027 within sixty days by the district attorney, that person may file suit to terminate the parental rights of the surviving parent.
Louisiana Children's Code Article 1015(4) permits termination of parental rights where a parent has abandoned a child. Louisiana Children's Code article 1015(4)(b) provides:
The grounds for termination of parental rights are:
. . . .
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
. . . .
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
At the August 18, 2006 hearing, the trial court found that S.J.G. had made no significant contributions to her children's care and support since the previous court judgment of November 15, 2004. Under La. Ch.C. art. 1015(4)(b) this constitutes abandonment by the parent, and the trial court terminated S.J.G.'s parental rights for this reason.
The Louisiana Children's Code, however, makes abundantly clear that only the State or an authorized State official may institute termination proceedings. La. Ch.C. art. 1004. There is no private right of action to terminate another parent's parental rights, and there are no circumstances under which one parent may file a petition to terminate the parental rights of another parent. Mouret v. Godeaux, 2004-496 (La.App. 3 Cir. 11/10/04), 886 So.2d 1217, 1220; see State ex. rel. D.M., XXXX-XXXX (La.App. 4 Cir. 3/14/01), 785 So.2d 857, 858; see also In re Dantzler, 99-0625 (La.App. 1 Cir.6/25/99), 739 So.2d 907, writ denied, 99-2228 (La.8/2/99), 747 So.2d 38.
Furthermore, these procedural requirements are not flexible. Courts have widely acknowledged the sanctity of parental rights, stating that "[p]arental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law." State ex rel. A.C.H., 02-1014, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 791, 794, writ denied, 03-566 (La.3/14/03), 839 So.2d 50 (quotation omitted). Thus, termination of parental rights is "one of the most drastic actions the State can take against its citizens." State ex rel. J.A., 99-2905, p. 9 (La.1/12/00), 752 So.2d 806, 811. As a result, the Louisiana legislature "has imposed strict procedural and evidentiary requirements that must be met before the issuance of a judgment terminating parental rights." State ex rel. E.C., 99-629, p. 5 (La.App. 1 Cir. 6/25/99), 739 So.2d 318, 321; A.C.H., 846 So.2d 791.
Mouret v. Godeaux, 886 So.2d at 1220.
In this case, the trial court did not follow the proper procedures for termination under La. Ch. C. art. 1004. The State did not petition for termination, nor did the court on its own motion order the filing of such a petition. Finally, neither the court nor the District Attorney authorized a special private counsel to bring such a petition. See Mouret v. Godeaux, 886 So.2d at 1220.
Rather, the court based its termination of S.J.G.'s parental rights on a petition brought by A.A.G. This contravenes the strict procedural requirements of termination proceedings, implemented by the *1028 legislature to safeguard parental rights. See Mouret v. Godeaux, 886 So.2d at 1220.
Thus, the law is clear that A.A.G. has no right of action to terminate the parental rights of S.J.G. See La. Ch.C. art. 1004. The lack of a right of action to initiate suit may be noticed by the appellate court on its own motion. La. C.C.P. art. 927. A.A.G.'s remedy is to seek a modification of custody. See State ex rel D.M., 785 So.2d at 859.
Thus, that portion of the judgment terminating the parental rights of S.J.G. is vacated. A.A.G. filed a petition for sole custody, and/or a petition to terminate parental rights, thus we remand the case to the trial court for further proceedings in the custody dispute. In the interim, in accord with the previous stipulated judgment in this case, dated February 14, 2005, custody of the children remains with A.A.G., S.J.G. has alternate weekend visitation, and S.J.G.'s child support payments remain at $275.00 per month.

ASSIGNMENT OF ERROR NO. 2
S.J.G. asserts that the trial court erred in denying her request for a continuance. After careful consideration of the record, and finding that the trial court had already granted S.J.G. a two-month continuance in this case, we find no abuse of discretion by the trial court in its denial of the continuance.

ASSIGNMENT OF ERROR NO. 3
S.J.G. asserts that the trial court erred in imposing jail time for nonpayment of child support without allowing appellant to purge herself by payment of said sums. The record shows that S.J.G. had numerous opportunities to pay her child support during the course of the proceedings. We find no abuse of discretion by the trial court in this matter.

ASSIGNMENT OF ERROR NO. 4
S.J.G. asserts that the trial court erred in imposing jail time for contempt of court because her actions "while frustrating to the court, did not arise to the level [of] contemptuousness and complete disruption of the court proceeding to justify such a drastic punishment." A review of the record shows that S.J.G. interrupted the hearing numerous times. We find no abuse of discretion by the trial court in this matter.

DECREE
Therefore, for the foregoing reasons, that portion of the trial court judgment that terminated S.J.G.'s parental rights is vacated and in all other aspects the trial court judgment is affirmed. The previous stipulated child custody judgment dated February 14, 2005 remains in effect and the case is remanded to the trial court for further proceedings in the custody dispute. Costs are assessed against A.A.G.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED.
MCCLENDON, J., concurs with result reached by the majority.
NOTES
[1] Pursuant to Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal, the initials of the parties involved in this matter will be used instead of their names to protect the privacy of the minor children.